# 11-1038-CV

---

IN THE
## UNITED STATES COURT OF APPEALS
FOR THE
## SECOND CIRCUIT

---

**NEW YORK ADVERTISING LLC FKA GANESHA OAK LLC,
11 CLASSIC, INC., and SINGAS EXPRESS, INC.,**

*Defendants - Appellants.*

**KAMINI VADHAN,**

*Defendant-Counter-Plaintiff – Appellant,*

*-against-*

**SINGAS FAMOUS PIZZA BRANDS CORP.,**

*Plaintiff - Appellee,*

**SINGAS FAMOUS PIZZA & RESTAURANT CORP.,**

*Plaintiff-Counter-Defendant - Appellee,*

---

ON APPEAL FROM THE SOUTHERN DISTRICT OF NEW YORK

---

**BRIEF OF DEFENDANTS – APPELLANTS AND
DEFENDANT-COUNTER-PLAINTIFF - APPELLANT**

---

**LAW OFFICE OF JOSEPH P. GARLAND**
**1 Barker Avenue, Suite 230**
**White Plains, New York 10601**
**(914) 912-7858**

*Attorneys for Defendants – Appellants and
Defendant-Counter-Plaintiff - Appellant*

## **Table of Contents**

   I. Jurisdictional Statement.....................................................................1

  II. Statement Of The Issue Presented For Review ...............................1

 III. A Statement Of The Case .................................................................2

 IV. Statement Of Facts..........................................................................4

  V. Summary Of Argument ...................................................................5

 VI. Standard of Review.........................................................................6

VII. Argument .......................................................................................7

    1. The Op. & Order Failed To Analyze Whether The Restraint Properly Extended To The Jackson Heights Restaurant. ................................7

    2. Any Restraint Must Be The Least Restrictive Necessary To Protect Singas's Legitimate Interests.........................................................13

    3. The Hardship to the Jackson Heights Restaurant .........................17

VIII. Conclusion ...................................................................................18

# Table Of Authorities

**Cases**

*American Broadcasting Companies, Inc. v. Wolf*, 52 N.Y.2d 394, 438 N.Y.S.2d 482, 420 N.E.2d 363 (1981)) ..................................................................8

*American Inst. of Chem. Eng'rs v. Reber-Friel Co.*, 682 F.2d 382 (2d Cir. 1982) ........................................................................................................................7

*Baker's Aid v. Hussmann Foodservice Co.,* 730 F. Supp. 1209 (E.D.N.Y. 1990) .......................................................................................... 8, 9, 10, 12

*Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13 (2d Cir. 1987) .................9

*Carvel Corp. v. Eisenberg,* 692 F. Supp. 182 (S.D.N.Y. 1988) ...............................9

*DAR & Assocs., Inc. v. Uniforce Serv., Inc.*, 37 F. Supp. 2d 192, 197 (E.D.N.Y. 1999)..................................................................................................8, 12

*Elite Promotional Marketing, Inc. v. Stumacher*, 8 A.D.3d 525, 779 N.Y.S.2d 528, 2004 NY Slip Op 05407 (2d Dep't 2004) ....................................9

*Joseph Scott Co. v. Scott Swimming Pools, Inc.,* 764 F.2d 62 (2d Cir. 1985).. 14, 15

*Kickham Hanley P.C. v. Kodak Retirement Income Plan*, 558 F.3d 204 (2d Cir. 2009) .............................................................................................................7

*Sunward Elec. Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004)................... 14, 15, 16

*Vincenty v. Bloomberg*, 476 F.3d 74 (2d Cir. 2007)................................................7

**Statutes**

28 U.S.C. § 1292(a)(1)...............................................................................................1

Lahnam Act, 15 U.S.C. § 1051 et seq.......................................................................1

# DEFENDANTS/APPELLANTS' BRIEF

## I. Jurisdictional Statement

The jurisdiction of the district court, S.D.N.Y., existed pursuant to the Lahnam Act, 15 U.S.C. § 1051 et seq., and under New York law, for which the district court's supplemental jurisdiction was invoked. (Cplt. (A-11).) Plaintiffs asserted that Defendants violated the Lahnam Act by improperly using Defendants' trademarks, *viz.* "Singas Famous Pizza" and a "Singas Famous Pizza" logo. (*Ibid.* (A-19-21, A-24-25).) Plaintiffs also asserted claims that Defendants had breached a contract with Plaintiffs. (*Ibid.* (A-21-23, A-26-27).)

The district court granted Plaintiff's motion for a preliminary injunction, and a preliminary injunction was issued. (A-283-294.)

The order granting the preliminary injunction was entered on February 14, 2011 (S.D.N.Y. Docket No. 24 (A-6)), and Defendants filed their notice of appeal on March 15, 2011, (S.D.N.Y. Docket No. 37 (A-10)), thereby making this appeal timely.

This appeal is from an order granting a preliminary injunction and this Court therefore has jurisdiction over this appeal. 28 U.S.C. § 1292(a)(1).

## II. Statement Of The Issue Presented For Review

When a non-compete clause precludes the operation of an "Italian-style" restaurant within ten miles of a franchisee's location in Manhattan, will such clause

be enforced to bar the operation of such a restaurant in Queens over seven miles from the franchisee's location? The district court, Holwell, J., found that it would.

### III. <u>A Statement Of The Case</u>

Plaintiffs filed their complaint, (A-11), against Defendants on November 30, 2010. Defendants were involved in the operation of an Italian-style restaurant located on Avenue C in Manhattan, which operated pursuant to a franchise agreement with Plaintiffs. Plaintiffs are two affiliated companies. Singas Famous Pizza Brands Corp. owns several trademarks. Singas Famous Pizza & Restaurant Corp. is a franchisor. (Cplt. ¶ 11 (A-13).) For purposes of this Brief, they are referred to as "Singas Famous".

Singas's action arises from the claim that Defendants breached the franchise agreement, (A-56-81), by operating an Italian-style restaurant in Jackson Heights, New York. It alleges that the franchisee was sufficiently connected to the company that operated the non-franchise Jackson Heights restaurant so that the franchise agreement was breached. It asserts that before and after the termination its trademarks were improperly used in violation of the Lahnam Act. (Cplt.  ¶¶ 32-45 (A-19-21), ¶¶ 60-71 (A-24-25).)[1] Further, Singas Express claims that by operating the

---

[1] Judge Holwell did not reach the issue of whether an injunction was appropriate for the alleged trademark infringements; he found that because an
(footnote cont'd . . .)

two restaurants after the termination of the franchise agreement Defendants

violated the no-compete provisions of the franchise agreement as well as a separate

agreement. (Cplt.  ¶¶ 46-59 (A-21-23), ¶¶ 72-78 (A-26-27).)

Shortly after filing the Complaint, Singas moved for the entry of a prelimi-

nary injunction barring the operation of the two restaurants as Italian-style. (A-30.)

After the parties filed affidavits and affirmations, on January 14, 2011 the district

court held a hearing on Singas's motion. (A-190-281 (transcript).)

On February 10, 2011, Judge Holwell signed a memorandum and order, (the

"Injunction"), granting the motion. It was entered on February 14, 2011. (S.D.N.Y.

Docket No. 24 (A-282-294).) He ordered:

> Defendants are enjoined from operating in any way, directly or indi-
> rectly, (a) the restaurant located at 94 Avenue C, New York, New
> York and doing business as Singas Famous Pizza; and (b) the restau-
> rant located at 35-68 73rd Street, Queens, New York and doing busi-
> ness as Queens New York Famous Pizza.[2]

> This appeal followed.[3]

---

(. . . footnote cont'd)
injunction was appropriate under the breach-of-contract claims, consideration of
the trademark claim was "superfluous". (A-287.)

  [2] Feb. 10, 2011 Opinion and Order (the "Op. & Ord.") (A-294).

  [3] Defendants made a motion in this Court for an order modifying the
injunction. That motion was denied without prejudice by Judge Lynch on May 25,
2011.

# IV. <u>Statement Of Facts</u>

For purposes of this appeal, little is in dispute.[4] Plaintiffs Singas Famous Pizza Brands Corp. and Singas Pizza Restaurant Corp. ("Singas") operated Italian-style restaurants under the "Singas Famous" name. They also franchised the name and other aspects of the business. Certain Defendants (the "Franchise Defendants") operated one such franchised restaurant, located at 94 Avenue C in Manhattan. Another Defendant, Singas Express Inc., operated a non-franchised restaurant in Jackson Heights, Queens.

After the Hearing, the district court found that the operation of the Jackson Heights Restaurant violated the franchise agreement between Singas and the Franchise Defendants[5] and Singas was thereby justified in terminating whatever franchise agreement existed and to enforce its non-compete clause. That clause provided that upon the termination of the agreement the Franchise Defendants:

---

[4] Defendants take issue with many of the, albeit preliminary, findings of the district court. In particular, they dispute that Kamini Vadhan was involved with the Jackson Heights Restaurant so as to have violated the franchise agreement, which was the trigger for this litigation. Given the posture of the case, however, Defendants do not contend that those preliminary findings constituted an abuse of discretion.

[5] The franchisee and the terms of any franchise agreement are in dispute. But for this appeal, Defendants accept that there was a franchise agreement and that they ran afoul of its non-compete provisions in the operation of the Jackson Heights Restaurant.

agree[ ] for a period of two (2) years from the date of termination . . . not to either directly or indirectly continue engaging in the Italian food service business, nor acquire any interest in any competitive Italian food service business or venture or any substantially similar business to that of a Singas franchise within ten (10) miles of the Singas where Franchisee had the Affiliation. Franchisee acknowledges that the terms and conditions of this covenant are fair and reasonable to both the time and distance restrictions.[6]

The Injunction purports to enforce this restriction.

## V. <u>Summary Of Argument</u>

Notwithstanding the terms of a non-compete clause, it is only enforceable insofar as it is reasonable as to its temporal and geographic scope. Defendants do not dispute the temporal-reasonableness. As a matter of law, however, the district court erred when it upheld that ten-mile restriction in the context of the products at issue, Italian-style restaurants in Manhattan and Queens.

As explained below, enforcing a ten-mile restriction to require that Defendant Singas Express, Inc. shut down the Jackson Heights Restaurant was not reasonable and did not serve any legitimate interests of Singas. As such, the Injunction should be modified so as to exclude that restaurant from its coverage.

---

[6] Agreement at ¶ 22.03 *quoted at* Op. & Order, 2011 WL 497978, at *1-2 (A-283-284). There was a similar provision in a separate non-disclosure and non-competition agreement, (A-86). (Op. & Order, 2011 WL 497978, at *2 (A-284).)

The issue on this appeal is a simple one: Did the district court err when it enforced the non-compete clause's 10-mile provision to include the Jackson Heights Restaurant?

Consider a hypothetical. A member of the Court tells her law clerks after a morning on the bench that they'd have pizzas, her treat. If one of those clerks said she knew of a place in Queens that would deliver, our hypothetical jurist would question the sense of this clerk. Who would think of crossing a river and heading miles north to order a pizza? Yet, as we shall see, that is precisely the illogical leap made by the district court. That was its first error, discussed *infra* at 7-12. It did not consider, as it must, whether the particular restriction should extend to the Jackson Heights Restaurant.

The other error was the failure to address whether the restraint imposed was the "least restrictive" necessary to protect Plaintiffs' legitimate interests. It plainly was. (*Infra* at 13-16.)

## VI. <u>Standard of Review</u>

This Court reviews a district court's decision to grant a preliminary injunction for abuse of discretion, which occurs "when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision – though not necessarily the product of a legal error or a clearly erroneous factual finding – cannot be located within the range of

permissible decisions." *Vincenty v. Bloomberg*, 476 F.3d 74, 83 (2d Cir. 2007) (internal quotation marks omitted).[7]

The Injunction reflected an "error of law" as to the applicable standard for enforcing a non-compete covenant and a "clearly erroneous factual finding" regarding the application of the terms of the relevant covenant. Defendants seek to have the Court modify the Injunction or remand this case to the district court with instructions to modify the Injunction to exclude the Jackson Heights Restaurant from its coverage.

## VII. Argument

### 1. The Op. & Order Failed To Analyze Whether The Restraint Properly Extended To The Jackson Heights Restaurant.

In *American Inst. of Chem. Eng'rs v. Reber-Friel Co.*,  this Court cited a string of New York Court of Appeals cases regarding the appropriate analysis as to the enforceability of non-compete covenants under New York law. "New York courts adhere to a strict approach to enforcement of restrictive covenants because their enforcement conflicts with 'the general public policy favoring robust and uninhibited competition,' and 'powerful considerations of public policy which

---

[7] *Kickham Hanley P.C. v. Kodak Retirement Income Plan*, 558 F.3d 204, 209 (2d Cir. 2009) (Livingston, J.).

militate against sanctioning the loss of a man's livelihood.'"[8] Although a case addressing a former employee's right to compete, the principle applies more broadly.

Thus in *DAR & Assocs., Inc. v. Uniforce Serv., Inc.*, Judge Gleeson identified three types of restrictive covenants, sales-of-businesses, employees, and "ordinary commercial contracts, such as license agreements."[9] As to the last, which is what we have here, he continued:

> Courts analyze these types of covenants under a simple rule of reason, balancing the competing public policies in favor of robust competition and freedom to contract. In applying this rule of reason to this case, I will first consider whether Uniforce has demonstrated a legitimate business interest that warrants the enforcement of the restrictive covenants. Then I will examine the reasonableness of the covenants with respect to geographic scope and temporal duration. Finally, I will analyze the degree of hardship that enforcing these covenants would inflict upon DAR, bearing in mind the degree to which DAR consciously agreed to bear the risk of such hardship when it entered into the contracts with Uniforce.[10]

As then-district Judge McLaughlin wrote in a business-restraint case,

*Baker's Aid v. Hussmann Foodservice Co.*, "[b]ecause the covenant is the result of

---

[8] 682 F.2d 382, 386-87 (2d Cir. 1982) (quoting *American Broadcasting Companies, Inc. v. Wolf*, 52 N.Y.2d 394, 404, 438 N.Y.S.2d 482, 487, 420 N.E.2d 363 (1981)) (footnotes omitted).

[9] 37 F. Supp. 2d 192, 197 (E.D.N.Y. 1999), *cited at* Op. & Order, 2011 WL 497978, at 11 (A-293).

[10] 37 F. Supp. 2d at 197 (citations omitted).

a bargained for exchange, it should be enforced *so long as it is reasonable and is no larger than necessary to protect legitimate business interests of [the plaintiff]*."[11] Indeed the requirement that all aspects of a restrictive covenant be considered individually is also seen in this Court's affirmation of Judge McLaughlin's earlier denial of Baker's Aid's motion for a preliminary injunction; it rejected the plaintiff's assertion that "irreparable harm must inevitably be assumed in breach of covenant cases," saying that this "depends upon the factual particulars in each case."[12]

Although here Judge Holwell acknowledged that "'[a] restrictive covenant against competition must also be reasonably limited temporally and geographically,'"[13] he failed to fulfill the requirement that the nature of a particular restraint be fully analyzed before it will be enforced. After saying that such covenants may be enforceable in franchise cases,[14] Judge Holwell's analysis of why Singas's covenant was enforceable was largely limited to:

---

[11] 730 F. Supp. 1209, 1214 (E.D.N.Y. 1990) (emphasis added).

[12] *Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 15 (2d Cir. 1987) (per curiam).

[13] Op. & Order, 2011 WL 497978, at *11 (A-293) (quoting *Elite Promotional Marketing, Inc. v. Stumacher*, 8 A.D.3d 525, 526, 779 N.Y.S.2d 528, 530, 2004 NY Slip Op 05407 (2d Dep't 2004)).

[14] Op. & Order, 2011 WL 497978, at *11 (A-293) (quoting *Carvel Corp. v. Eisenberg*, 692 F. Supp. 182, 186 (S.D.N.Y. 1988)).

The Post-Term Covenant and Non-Competition Agreements prohibited a terminated franchisee from directly or indirectly owning or operating "an Italian food service business" within 10 miles of the terminated franchise for two years. Given evidence that it took four years to find a suitable location for a franchise in Lower Manhattan after the closure of the former Second Avenue franchise, the time and distance restrictions appear reasonably tailored to permit Singas to open another franchise in the area of the Avenue C Restaurant. [Citations omitted.] Accordingly, Singas will likely be able to enforce the Post-Term Covenant and Non-Competition Agreements.[15]

Having found the restriction likely enforceable by its terms, he concluded as a matter of logic that because the Jackson Heights Restaurant was "within 10 miles of the Avenue C Restaurant" and Kamini Vadhan (the franchisee) would likely be shown to be at least indirectly involved with it, the Jackson Heights Restaurant must be closed.[16] The fallacy is that because the restraint was reasonable in time and space *as to the Avenue C Restaurant* it was thus reasonable in time and space for the Jackson Heights Restaurant, i.e., that it "is no larger than necessary to protect legitimate business interests of [Singas]."[17]

A step was skipped. Is the restraint reasonable in its geographic reach when for this type of restaurant in New York City it extends over 7 miles? What *legitimate* business interests for a restaurant in southern Manhattan are served by prohi-

---

[15] *Id.*

[16] *Id.*

[17] *Baker's Aid,* 730 F. Supp. at 1214.

biting the operation of a restaurant in Queens? The district court put much credence in the comments on a website the name of which, jacksonheightslife.com, suggests the local nature of the discussion, further evidenced the subject line for the thread: "New pizza place in the hood!"[18]

What's more, the interest identified by the district court as being protected was "to permit Singas to open another franchise in the area of the Avenue C Restaurant."[19] How does preventing the operation of a restaurant in another borough further Singas's interest in opening "another franchise in the area of the Avenue C Restaurant"? According to Singas, the Jackson Heights Restaurant is 7.32 miles from the one on Avenue C and the closest Singas Restaurant is over 1.2 miles away. (¶ 17, Affidavit of E. Almela (11/29/10) (A-39).) Pizza restaurants are inherently local. This is something of which the Court surely can take judicial notice. It is borne out by the website references to which the Op. & Order looked, i.e., "New pizza place in the hood!," and by the Op. & Order's reference to the "flagship store" having a "delivery area,"[20]

_____

[18] Op. & Order, 2011 WL 497978, at *7-8 (A-289-90). The site, last visited on Apr. 21, 2011, is:
http://www.jacksonheightslife.com/community/index.php?topic=5487.15

[19] Op. & Order, 2011 WL 497978, at -11 (A-293).

[20] Op. & Order, 2011 WL 497978, at *7 (A-289).

Is a 10-mile restraint for a pizzeria *inherently* unreasonable? Perhaps not. But as the cases show, that is an irrelevant question. What matters is – applying the approach endorsed in *DAR & Assocs.* and *Baker's Aid*, which naturally follows from what this Court said in a different context in *Sunward Elec. Inc. v. McDonald, (discussed infra*, at 13-15) – whether applying this restraint under the circumstances of this case to particular conduct (i) would protect a legitimate interest, (ii) extends only so far as is necessary to protect that interest, and (iii) does not impose an undue hardship on the person being restrained.[21]

The district court erred in not analyzing the appropriateness of closing the Jackson Heights Restaurant. Singas has no legitimate interest in preventing a competing pizzeria in Jackson Heights. Insofar as it has concerns that customers might be confused as to whether the Jackson Heights Restaurant is affiliated with it, those concerns can be handled with steps far short of the forfeiture of the operation. Closure was far "larger than necessary to protect legitimate business interests of [Singas]."[22] It was an abuse of discretion.

Singas prefers not to have other pizzerias in the neighborhoods of its own. The restraint here, though, relates to its interest in protecting the goodwill for its

---

[21] *DAR & Assocs.*, 37 F. Supp. 2d at 197-200.

[22] *Baker's Aid,* 730 F. Supp. at 1214.

name that was developed by the Avenue C Restaurant so that, as the district court correctly pointed out, Singas could "open another franchise in the area of the Avenue C Restaurant,"[23] an observation that is consistent with the cases cited on pages A-287-289 of the Op. & Order (2011 WL 497978, at *5-7). That this was the intent of the restraint is plain from the fact that Singas (which has restaurants that are over 10 miles from 94 Avenue C) did not define it as, for example, "X blocks from another Singas Restaurant," a restraint that may or may not have been reasonable but one that is not before the Court.

### 2. Any Restraint Must Be The Least Restrictive Necessary To Protect Singas's Legitimate Interests

Under New York law regarding restrictive covenants, they will only be enforced to the extent that they are necessary to protect a legitimate interest. The same result is reached when considering this Court's jurisprudence on trademark cases, to which the district court looked when it granted the Injunction.[24] It took the wrong lessons from those cases too.

In *Sunward Elec. Inc. v. McDonald*, the defendants were former licensees for the invisible dog-fence company "Dog Guard," and that company, the plaintiff,

---

[23] Op. & Order, 2011 WL 497978, at *11 (A-293).

[24] *See* Op. & Order, 2011 WL 497978, at *8 (A-290).

13

owned the "Dog Guard" and "Out-of-Sight Fencing" trademarks.[25]  The defen-

dants, it was alleged, kept trademarked items in their stores after the termination

and their telephone-directory ads "state 'Dog Guard' and 'Out-of-Sight Fencing'

near the top of the ad and in bold, and then provide Defendants' phone number and

web address (www.dogguardalabama.com)." The district court granted the

requested injunction, ordering the defendants to assign the phone numbers that

were in the ads with the plaintiff's trademarks to the plaintiff.[26]

Judge Holwell viewed *Sunward* as authority of possible post-termination

"consumer confusion" that is "at least strong evidence of irreparable harm."[27] He

overlooked that this Court remanded as to the scope of the injunction. In a section

entitled, "The Scope of the Preliminary Injunction," Judge Pooler wrote:

> "[A] preliminary injunction is a specific equitable remedy and thus,
> must be framed in such a way as to strike a delicate balance between
> competing interests. By necessity, the scope of the injunction must be
> drawn by reference to the facts of the individual case, reflecting a
> careful balancing of the equities." *Joseph Scott Co. v. Scott Swimming
> Pools, Inc.,* 764 F.2d 62, 67 (2d Cir. 1985). A preliminary injunction
> should "enjoin only those uses that are likely to create appreciable
> confusion, and no more." *Joseph Scott Co.,* 764 F.2d at 67. While we
> hold that the preliminary injunction was properly issued and therefore
> do not vacate it, we remand this case to the district court so that it may

---

[25] 362 F.3d 17, 21 (2d Cir. 2004) (Pooler, J.).

[26] 362 F.3d at 22.

[27] Op. & Order, 2011 WL 497978, at *8 (A-290).

conduct a factual inquiry into the scope of the injunctive order and modify it if necessary.[28]

She concluded: "We therefore remand this case to the district court so that it may determine which of these alternatives would be least restrictive while still able to address Plaintiff's concerns. It may be that transferring the phone numbers at issue to an independent answering service [i.e., the relief initially granted] would best serve this purpose, although we leave it to the district court to so determine after it conducts a factual hearing on this discrete issue."[29]

*Sunward Elec.*, then, holds that a district court fashioning an injunction must do so in the manner that is the "least restrictive" necessary to protect the plaintiff's legitimate "concerns." Similarly, in *Joseph Scott* the Court concluded that the district court had overreached in how it restricted the defendant's use of his name in selling swimming pools. Instead of remanding, the court accordingly modified the district court's order, requiring only that the defendant make clear that he was no longer associated with the plaintiff.[30]

Applying these principles to the Jackson Heights Restaurant, Judge Holwell found a likelihood that Plaintiff would be able to show sufficient similarities

---

[28] 362 F.3d at 26 (citations omitted).

[29] *Id.*, 362 F.3d at 27.

[30] 764 F.2d at 68-69

15

unrelated to any actual marks (save for the presence of a menu from the Avenue C

Singas Pizzeria) to cause people to be "confused" as to whether it is a Singas-

operation.

> The Op. & Order concluded:

> When the Jackson Heights Restaurant seems likely to create – and to
> have already created – confusion among customers within the delivery
> area of its original flagship store with whom Singas has built good-
> will, an injunction is warranted to prevent harm to that goodwill
> regardless of whether the Jackson Heights Restaurant has infringed
> Singas's trademark in its logo.[31]

> Even if true, *Sunward Elec.* requires that any remedy be the "least restrictive

while still able to address Plaintiff's concerns."[32] While *Sunward Elec.* concerned a

trademark claim, the district court's use of it to address whether the continued

operation of the pizzerias applies here too. Surely relief could be fashioned short of

mandating the closing of the Jackson Heights Restaurant to assure patrons that it is

in no way affiliated with Singas. As Arun Vadhan recites in paragraph 9 of his

Declaration, upon re-opening the Jackson Heights Restaurant will have nothing

that could lead anyone to think that it has anything to do with Singas and its

employees will be instructed to make that fact clear should anyone ask.

---

[31] Op. & Order, 2011 WL 497978, at *8 (A-290).

[32] 362 F.3d at 27.

### 3.   The Hardship to the Jackson Heights Restaurant

In the Preliminary Injunction, Judge Holwell wrote, "Any hardship defendants would suffer from an injunction would stem from their own breaches of the Agreement and the Non-Competition Agreement."[33] Mr. Vadhan sets out what those hardships are in his declaration. In any case, because, as detailed above, there is no basis for mandating the closing of the Jackson Heights Restaurant the somewhat circular logic of Judge Holwell fails.

---

[33] Op. & Order, 2011 WL 497978, at *11 (A-293).

# VIII. <u>Conclusion</u>

For the foregoing reasons, the Court should order that the district court modify the Injunction to exclude from its coverage the Jackson Heights Restaurant and to allow the case to continue in that court on the issue of whether, in fact, there was a violation by Defendants and whether Plaintiffs are entitled to any relief or whether the violation was at Plaintiffs' hands for which Defendants may recover. In the alternative, Defendants move to have this Court remand to the district court the issue of whether the Jackson Heights Restaurant should be included in the restraint, applying the appropriate standards.

Dated: White Plains, New York
June 6, 2011

LAW OFFICE OF JOSEPH P. GARLAND

_____/S/_____

Joseph P. Garland
1 Barker Avenue, Suite 230
White Plains, New York 10601
(914) 912-7858
joe.jpgarland@gmail.com

Attorney for Defendants/Appellants

**Federal Rules of Appellate Procedure Form 6.  Certificate of Compliance With Rule 32(a)**

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed.R. App. P.32(a)(7)(B) because:

[✓]    this brief contains  3,848                    words, excluding the
parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]    this brief uses a monospaced typeface and contains    [state the number of]
lines of text , excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the
type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓]    this brief has been prepared in a proportionally spaced typeface
using [ Microsoft Word                              ] in
[ 14-point Times New Roman              ], *or*

[ ]    this brief has been prepared in a monospaced typeface using
[ state name and version of word processing program  ] with
[ state number of characters per inch and name of type style ].

(s) _____

Attorney for ___ Defendants/Appellants ___

Dated: ___ June 6, 2011 _____